## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DANIELA BOWMAN,

      Plaintiff,

vs.                                                                    No. CIV 21-0675 JB\SCY

CORDELIA FRIEDMAN,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** comes before the Court on: (i) the Proposed Findings and Recommended Disposition Regarding Motion to Dismiss; (ii) Defendant Cordelia Friedman's Motion to Dismiss, filed October 27, 2021 (Doc. 19)("MTD"); and (iii) Plaintiff's Motion for Leave to File Sur-reply in Opposition to Defendant's Motion to Dismiss, filed November 17, 2021 (Doc. 30)("Surreply Motion").  Plaintiff Daniela Bowman is proceeding pro se.  The Court referred these matters to the Honorable Steven C. Yarbrough, United States Magistrate Judge for the United States District Court of the District of New Mexico, <u>see</u> Order of Reference Relating to Non-Prisoner Pro Se Cases, filed January 31, 2022 (Doc. 44), who entered the Proposed Findings and Recommended Disposition Regarding Motion to Dismiss, filed June 7, 2022 (Doc. 52)("PFRD").  In the PFRD, Magistrate Judge Yarbrough recommends that the Court deny the Surreply Motion and grant the MTD.  <u>See</u> PFRD at 9.  On June 21, 2022, Bowman timely objected to the PFRD.  <u>See</u> Plaintiff's Objections to Court's Proposed Findings and Recommended Disposition Regarding Motion to Dismiss, filed June 21, 2022 (Doc. 53)("Objections").  Bowman's Objections are now before the Court.

The Court has considered Defendant Cordelia Friedman's MTD, Plaintiff's Response to Defendant Cordelia Friedman's Motion to Dismiss, filed October 29, 2021 (Doc. 22), Defendant Cordelia Friedman's Reply in Support of Her Motion to Dismiss, filed November 12, 2021 (Doc. 26)("Reply"), Bowman's Surreply Motion, Defendant Cordelia Friedman's Response in Opposition to Plaintiff's Motion for Leave to File Sur-reply in Opposition to Defendant's Motion to Dismiss, filed November 29, 2021 (Doc. 34), Plaintiff's Reply in Support of Her Motion for Leave to File Sur-reply, filed November 30, 2021 (Doc. 36), the PFRD, and Bowman's Objections, in light of the legal standards described below and has conducted a de novo review of the PFRD portions to which Bowman objects.  Based on the Court's review, the Court concludes that Bowman's Objections to Magistrate Judge Yarbrough's PFRD are not sound and therefore grants the MTD and denies the Surreply Motion.

## LEGAL STANDARD REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1)("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement.").  Rule 72(b)(2) of the Federal Rules of Civil Procedure governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).  Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C.

§ 636 provides:

> A judge of the court shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which objection is
> made.  A judge of the court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.  The judge may also
> receive further evidence or recommit the matter to the magistrate judge with
> instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus attention

on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v.

One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents,

Known As: 2121 East 30th Street, Tulsa Okla., 73 F.3d 1057, 1059 (10th Cir. 1996)("One

Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of

Appeals for the Tenth Circuit has noted, "the filing of objections advances the interests that

underlie the Magistrate's Act,[1] including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing

Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986)); United States v. Walters,

638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review."    One Parcel, 73 F.3d at 1060.  "To further advance the

policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, ha[s]

adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the

magistrate's findings or recommendations waives appellate review of both factual and legal

---

[1]Congress enacted the Federal Magistrate Act, 28 U.S.C. §§ 631-39, in 1968.

questions.'"  One Parcel, 73 F.3d at 1059 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)).  "[O]nly an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act."  One Parcel, 73 F.3d at 1060.  In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit states that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[2]

In One Parcel, in accord with other Courts of Appeals, the Tenth Circuit expanded the waiver rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States of America -- in the course of approving the United States

---

[2]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the that extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Court of Appeals for the Sixth Circuit's use of the waiver rule -- has noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.  The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report.  See S. Rep. No. 94-625, pp. 9-10 (1976)(hereinafter Senate Report); H.R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereinafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.  Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.  Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time."  See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereinafter Senate Hearings).  The Committee also heard Judge [Charles] Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.  See id., at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order.").  The Judicial Conference of the United States, which supported the de novo standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  See Senate Hearings, at 35, 37.  Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review.  There is no indication that Congress, in enacting § 636(b)(1)(C)), intended to require a district judge to review a magistrate's report to which no objections are filed.  It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort.  We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (footnotes omitted).

The Tenth Circuit also has noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting

Moore v. United States, 950 F.2d at 659.  The Tenth Circuit joins "those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations."  Moore v. United States, 950 F.2d at 659.  Cf. Thomas v. Arn, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask. [A failure to object] does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.").  In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal, because it would advance the interests underlying the waiver rule.  See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elected to address merits despite potential application of waiver rule, but Courts of Appeals opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's PFRD "on . . . dispositive motions, the statute calls for a de novo determination, not a de novo hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980).  The Tenth Circuit has stated that a de novo determination, pursuant to 28 U.S.C. § 636(b), "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation."  In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).  The Supreme Court has noted that, although a district court must make a de novo determination of the objections to recommendations under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the Magistrate Judge's proposed findings and recommendations.  See Raddatz, 447 U.S. at 676 ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place

on a magistrate's proposed findings and recommendations.")(quoting 28 U.S.C. § 636(b)(1));

Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla., 8 F.3d 722,

724-25 (10th Cir. 1993)("Bratcher")(holding that the district court's adoption of the Magistrate

Judge's "particular reasonable-hour estimates" is consistent with a de novo determination,

because "the district court 'may *accept*, reject, or modify, *in whole or in part*, the findings

or recommendations made by the magistrate'" (quoting 28 U.S.C. § 636(b)(1))(emphasis in

Bratcher but not in 28 U.S.C. § 636(b)(1))). "'Congress intended to permit whatever reliance a

district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's

proposed findings and recommendations.'" Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir.

1991)(quoting United States v. Raddatz, 447 U.S. at 676).

Where no party objects to the Magistrate Judge's PFRD, the Court has, as a matter

of course in the past and in the interests of justice, reviewed the Magistrate Judge's

recommendations. In Workheiser v. City of Clovis, No. CIV 12-0485 JB/GBW, 2012 WL

6846401 (D.N.M. December 28, 2012)(Browning, J.), where the plaintiff failed to respond to

the Magistrate Judge's PFRD, although the Court determined that the plaintiff "has waived

his opportunity for the Court to conduct review of the factual and legal findings in the

[proposed findings and recommended disposition]," the Court nevertheless conducted such a

review. 2012 WL 6846401, at *3. The Court generally does not, however, review the Magistrate

Judge's PFRD de novo, and determine independently necessarily what it would do if the issues

had come before the Court first, but rather adopts the PFRD where "[t]he Court cannot say that

the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, [obviously[3]] contrary

---

[3]The Court previously used as the standard for review when a party does not object to the Magistrate Judge's proposed findings and recommended disposition whether the recommendation

to law, or an abuse of discretion." Workheiser v. City of Clovis, 2012 WL 6846401, at *3. This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the intent of the waiver rule than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court, however, is reluctant to have no review at all if its name is going to go at the bottom of the order adopting the Magistrate Judge's proposed findings and recommendations.

When plaintiffs proceed pro se, the court generally construes their pleadings liberally, holding them to a less stringent standard than those a party represented by counsel files. See Hall

---

was "clearly erroneous, arbitrary, contrary to law, or an abuse of discretion," thus omitting "obviously" in front of contrary to law. Solomon v. Holder, CIV 12-1039 JB/LAM, 2013 WL 499300, at *4 (D.N.M. January 31, 2013)(Browning J.)(adopting the recommendation to which there was no objection, stating: "The Court determines that the PFRD is not clearly erroneous, arbitrary, contrary to law, or an abuse of discretion, and accordingly adopts the recommendations therein"); O'Neill v. Jaramillo, CIV 11-0858 JB/GBW, 2013 WL 499521 (D.N.M. January 31, 2013)(Browning, J.)("Having reviewed the PRFD under that standard, the Court cannot say that the Magistrate Judge's recommendation is clearly erroneous, arbitrary, contrary to law, or an abuse of discretion. The Court thus adopts Judge Wormuth's PFRD.")(citing Workheiser v. City of Clovis, 2012 WL 6846401, at *3); Galloway v. JP Morgan Chase & Co., CIV 12-0625 JB/RHS, 2013 WL 503744 (D.N.M. January 31, 2013)(Browning, J.)(adopting the Magistrate Judge's recommendations upon determining that they were not "clearly contrary to law, or an abuse of discretion."). The Court does not believe that "contrary to law" accurately reflects the deferential standard of review that the Court intends to use when there is no objection. Finding that a Magistrate Judge's recommendation is contrary to law would require the Court to analyze the Magistrate Judge's application of law to the facts or the Magistrate Judge's delineation of the facts -- in other words performing a de novo review, which is required when a party objects to the recommendations only. The Court believes adding "obviously" better reflects that the Court is not performing a de novo review of the Magistrate Judges' recommendations. Going forward, therefore, the Court will, as it has done for some time now, review Magistrate Judges' recommendations to which there are no objections for whether the recommendations are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  In its review, the court makes allowance for

pro se litigants' "failure to cite proper legal authority, [their] confusion of various legal theories,

[their] poor syntax and sentence construction, or [their] unfamiliarity with pleading requirements."

Hall v. Bellmon, 935 F.2d at 1110.  The court will not, however, construct arguments or search

the record for the pro se party.  See Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840

(10th Cir. 2005).  Issues will be waived if the pro se party's briefing "consists of mere conclusory

allegations with no citations to the record or any legal authority for support."  Garrett v. Selby

Connor Maddux & Janer, 425 F.3d at 840

## ANALYSIS

Bowman makes five Objections to the PFRD.  The Objections are that: (i) Magistrate Judge

Yarbrough determines arbitrarily that Bowman does not allege an unreasonable search and seizure

under the Fourth Amendment to the Constitution of the United States of America, see Objections

at 1; (ii) Magistrate Judge Yarbrough misapplies the legal standard for determining violations of

procedural due process, see Objections at 9; (iii) Magistrate Judge Yarbrough recommends

improperly denying Bowman's Surreply Motion, see Objections at 22; (iv) Magistrate Judge

Yarbrough recommends improperly considering only Bowman's Civil Rights Complaint Pursuant

to 42 U.S.C. § 1983, filed July 21, 2021 (Doc. 1)("Complaint")and not Plaintiff's Answer to

Court's Order to Show Cause, filed August 13, 2021 (Doc. 7)("Response"), see Objections at 26;

and (v) Magistrate Judge Yarbrough should not recommend that the Court need not consider the

expectation of privacy issue, see Objections at 30.  The Court will address each in turn.

I.    **BECAUSE BOWMAN DOES NOT ALLEGE THAT A SEARCH OR SEIZURE EVER OCCURRED, BOWMAN DOES NOT STATE A CLAIM FOR A <u>VIOLATION OF THE FOURTH AMENDMENT</u>.**

In her Complaint, Bowman alleges that Friedman conducted an illegal search and seizure of her tax returns, because Friedman used lies and manipulation to the convince the State court that Bowman's tax returns were at issue and that, as a result, the State court entered a discovery order for the tax returns.  <u>See</u> Complaint at 19-20.  In the PFRD, Magistrate Judge Yarbrough recommends concluding that Bowman does not state a claim for a violation of the Fourth Amendment for this alleged illegal search and seizure, because Bowman never alleges that she complied with the discovery order.  PFRD at 6.  That is,

> Plaintiff cites no law, and the Court is aware of none, to support the notion that a party to a civil lawsuit conducts a search and seizure by obtaining a court order for discovery, particularly when the allegedly aggrieved party refuses to comply with the court order and so never actually produces the discovery ordered.  In other words, regardless of whether Defendant made lies and misrepresentations to the state court, Plaintiff does not allege that either a search or a seizure occurred as a result of those lies and misrepresentations.  Plaintiff's failure to make such an allegation is fatal to her Fourth Amendment claim.

PFRD at 6.

Bowman objects to this reasoning, arguing that "[c]ompulsory production of person's private papers is 'search and seizure' within the Fourth Amendment."  Objections at 2 (no citation given for quotation).  This argument, however, continues to miss the point that Friedman and Magistrate Judge Yarbrough raise that no search or seizure ever occurred, because Bowman does not allege that she produced her tax returns in response to the court order.  Bowman cites numerous law review articles and cases discussing "coerced production of information," arguing that coerced production of documents is still a search or seizure even if no physical/actual intrusion into a given enclosure took place.  See, e.g., Plaintiff's Answer to Court's Order to Show Cause at 10-13, filed

August 13, 2021 (Doc. 7).  These authorities do not address the scenario here, where Bowman never produced her tax returns, and therefore, no search or seizure took place.  See Childress v. City of Arapaho, 210 F.3d 1154, 1156 (10th Cir. 2000)("To state a claim under the Fourth Amendment, plaintiffs must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'")(quoting U.S. Const. amend. IV; 42 U.S.C. § 1983).

Bowman also argues in her Objections that "physical/actual search or seizure is not required in order for a person to claim [a] violation of the Fourth Amendment," citing Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523 (1967)("Camara"). Objections at 6.  In Camara, Camara, an apartment lessee, refused to allow a public health inspector to inspect his apartment without a warrant.  See 387 U.S. at 525-26.  After Camara refused inspection two more times, a criminal complaint was filed against him, alleging a violation of the housing code.  See 387 U.S. at 526.  Camara argued that the housing code section allowing inspectors to enter private dwellings without a search warrant and probable cause violated the Fourth and Fourteenth Amendments of the Constitution of the United States, and accordingly, that he may not be prosecuted for refusing to permit the unconstitutional inspection.  387 U.S. at 527. The Supreme Court held that Camara has a constitutional right to insist that the inspectors obtain a search warrant and therefore that he could not be convicted for refusing to consent to the inspection.  See 387 U.S. at 540.

Camara does not hold, as Bowman argues, that an attempted search and seizure, i.e., the State court's order that Bowman produce her tax returns, is the same as an actual search and seizure such that a plaintiff can bring a § 1983 claim alleging a violation of the Fourth Amendment when no actual search or seizure ever occurred.  An argument based on Camara -- that Bowman faced the difficult choice of complying with a court order to produce her tax returns that violated her

Fourth Amendment right, as she alleges, or failing to follow that order, resulting in sanctions before the State court -- would be best directed at the State court.  Instead, in this case, Bowman brings a § 1983 claim alleging that Friedman violated her right to be free from unreasonable searches and seizures, but does not state that a search or seizure ever occurred.

To address the PFRD's conclusion that neither a search nor seizure ever occurred, Bowman asserts that the

> Defendant lied to the state court that Plaintiff could obtain non-existing documents through [Internal Revenue Service ("IRS")] form 4506, causing Plaintiff's arrest, and thus seized the Plaintiff[.]  The Defendant personally and physically handled, gathered, and took away Plaintiff's private paper, IRS form 4506, while she was illegally arrested and thus searched and seized it.

Objections at 5 (first alteration added).  She asserts that such allegations are in ¶ 23, Complaint at 10-11, of her Complaint.  See Objections at 5.  Paragraph 23 of her Complaint, however, contains a slightly differently narrative.  See Complaint at 10-11.  It alleges that, during a court hearing on July 27, 2018, Friedman lied to the State court about Bowman's deadline to submit her tax returns.  See Complaint ¶ 23, at 11.  The State court then detained Bowman in the courtroom and threatened her with jail, forcing her to sign a form 4506.[4]  See Complaint ¶ 23, at 11.  With these allegations, however, Bowman still falls short of alleging the occurrence of a search and seizure, for two reasons.  First, she does not allege that she was arrested, but only that the State court detained her in the courtroom and that she "almost lost her freedom."  Complaint ¶ 23, at 11.  Bowman's Complaint, likewise, does not allege a Fourth Amendment violation against Friedman for the State court detaining Bowman in the courtroom.  See Complaint ¶¶ 32-48, at 16-21.  Second, solely

---

[4]According to the IRS website, a form 4506 is used to request a copy of a tax return or designate a third party to receive a tax return.  IRS, About Form 4506, *Request for Copy of Tax Return*, https://www.irs.gov/forms-pubs/about-form-4506 (last visited July 12, 2022).

because Bowman filled out the form to request tax returns does not establish that a seizure of her

tax returns ever occurred. Nowhere in her Complaint does she say that Friedman ever used the

form 4506 to obtain her tax returns from the IRS.[5]

## II.    MAGISTRATE JUDGE YARBROUGH APPLIED PROPERLY THE LEGAL STANDARD FOR DETERMINING A PROCEDURAL DUE PROCESS <u>VIOLATION</u>.

In her Complaint, Bowman alleges that Friedman lied to the State court causing the State

Court to dismiss her case.  <u>See</u> Complaint at 21-22.  She therefore alleges that Friedman interfered

with her right to procedural due process under the Fourteenth Amendment.  See Complaint at 22.

Magistrate Judge Yarbrough recommends dismissing this claim, because, "as the facts Plaintiff

describes in her complaint demonstrate, Plaintiff was afforded significant process in the state

court."  PFRD at 7.  Magistrate Judge Yarbrough explains that

> it seems that Plaintiff's real claim is that she disagrees with the state court's rulings.
> That is, after hearing from the parties, the state court agreed with Defendant about
> the relevancy of Plaintiff's tax returns, ordered production of those returns, and
> ultimately dismissed the case for discovery violations.  Plaintiff disagrees with
> those orders.  Plaintiff essentially asserts that all of this process that she was given
> was tainted by the lies and misrepresentations Defendant made to the state court.
> But Plaintiff does not allege that Defendant made these lies and misrepresentations
> to the state court in secret.  To the contrary, Plaintiff acknowledges in her complaint
> that, on multiple occasions, the state court afforded her the opportunity to address
> Defendant's alleged lies and misrepresentations.

PFRD at 8.

Bowman objects to this conclusion, asserting that the PFRD ignores the facts from her

Complaint, "reads between the lines" of her Complaint, and views the facts in the light "most

adverse" to her instead of in the light most favorable to her.  Objections at 9-10.  Although the

---

[5]Indeed, in her MTD, Friedman does not argue that she or the State court ever obtained
Bowman's federal tax returns.  <u>See</u> MTD at 4.

PFRD summaries Bowman's claim as a disagreement with the State court's ruling -- a characterization that Bowman does not make herself -- the PFRD makes this characterization based on Bowman's allegations in the Complaint that exemplify the process she received and her dissatisfaction with the outcome of that process.  See PFRD at 8 (citing Complaint ¶¶ 15, 17, 19, 25, 31, 37, at 6-19).  Bowman alleges that, "[a]t this state of the lawsuit, this Court is obligated to accept the fact that Defendant lies and misrepresented facts in front of the state court as presented in Plaintiff's Complaint."  Objections at 11.  The PFRD makes that assumption, reasoning that, "even assuming Defendant made lies and misrepresentations to the state court, those lies did not exclude Plaintiff from engaging in the state court process."  PFRD at 8.

Bowman also objects to the PFRD's application of the legal standard for due process.  See Objections at 9.  In the PFRD, Magistrate Judge Yarbrough recites this legal standard: "In determining whether an individual's procedural due process [rights] were violated, the Tenth Circuit directs courts to engage in a two-step inquiry: (1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?"  PFRD at 7 (citing Camuglia v. The City of Albuquerque, 448 F.3d 1214, 219 (10th Cir. 2006)).  Bowman now argues that the PFRD skips step one and proceeds directly to step two.  See Objections at 17.  This characterization of the PFRD's analysis is accurate, but Magistrate Judge Yarbrough's analysis is not an error.  Magistrate Judge Yarbrough assumes in Bowman's favor that she has a protected property interest in her State court case and finds that, even if she has a property interest, she was afforded the appropriate level of process.

Bowman proceeds to explain the law regarding due process in New Mexico related to tax disputes and argues that she was denied due process, because the State court never ruled her case's merits -- whether she was an employee or independent contractor.  See Objections at 12-15.  Due

process does not guarantee, however, Bowman her desired case outcome.[6]   Rather, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  As Bowman alleges in her Complaint, and as the PFRD recites, the State court gave Bowman an opportunity to be heard, including an opportunity to address Friedman's alleged lies and misrepresentations.   See Complaint ¶¶ 15, 17, 19, 31, at 6-9, 16; PFRD at 8.  The Court concludes that there is no error in the PFRD's analysis and agrees that Bowman's Complaint does not state facts demonstrating that she did not receive the appropriate level of process.

## III.   BECAUSE FRIEDMAN'S REPLY RAISES NO NEW ARGUMENTS, MAGISTRATE JUDGE YARBROUGH RECOMMENDS PROPERLY DENYING BOWMAN'S SURREPLY MOTION.

The PFRD recommends denying Bowman's request in her Surreply Motion to file a surreply to the MTD, because the "Plaintiff points to no new arguments that were raised in the reply and instead wishes to use the surreply to reargue points she made in her response brief." PFRD at 5.  Bowman objects to this recommendation, pointing to five arguments Friedman made in her Reply that Bowman asserts are new.  See Objections at 24.  Those allegedly new arguments, however, are only replies that Friedman made to arguments in Bowman's response brief.  Reply at 2-3, 5-6.  The Court agrees that Bowman points to no new arguments in the Reply that warrant a surreply.  See Navajo Health Found.-Sage Mem'l Hosp., Inc. v. Burwell, 110 F. Supp. 3d 1140,

---

[6] Bowman repeatedly cites N.M.S.A. § 7-1-29.1 to argue that, at the State-court level, she was entitled to a determination of the prevailing party. See Objections at 12-16.  Section 7-1-29.1 sets forth no such requirement, but provides for an award of costs and fees in an administrative or court proceeding if the taxpayer is the prevailing party.  See N.M.S.A. § 7-1-29.1.

1180 (D.N.M. 2015)("A surreply is appropriate and should be allowed where new arguments are raised in a reply brief.").

## IV.   BECAUSE BOWMAN'S RESPONSE DOES NOT CURE THE PLEADING DEFICIENCIES THAT THE PFRD IDENTIFIES, MAGISTRATE JUDGE YARBROUGH RECOMMENDS PROPERLY THAT THE COURT CONSIDER ONLY THE COMPLAINT'S ALLEGATIONS.

As explained in the PFRD, when Bowman first filed her Complaint, Magistrate Judge Yarbrough reviewed it and issued a Show Cause Order pointing out the same deficiencies before the Court in the MTD.  See PFRD at 4 (citing Order to Show Cause and Order Granting Motion to File Electronically, filed July 23, 2021 (Doc. 6)("Show Cause Order")).  Magistrate Judge Yarbrough ordered Bowman to show cause why this case should not be dismissed for failure to state a claim or to file an amended complaint.  See Show Cause Order at 5.  Bowman has not filed an amended complaint fixing the deficiencies that Magistrate Judge Yarbrough notes, but instead filed a Response, arguing that the claims in her original complaint are sufficient.  See Response at 8-26.  Because Bowman has not filed an amended complaint, in reviewing the sufficiency of Bowman's Complaint for the MTD, Magistrate Judge Yarbrough recommends that the Court consider only the Complaint's allegations and not her Response to the Show Cause Order.  See PFRD at 4.  Bowman objects to this recommendation, asserting that "the Court did not specify whether the Court is convinced that Plaintiff asserted new claims in [her Response] and thus [her Response] must be eliminated from the record, or whether the Court preferred [an] amended complaint vs. a response to its Order to Show Cause for other reasons."  Objections at 26.

The Court agrees with the PFRD's recommendation that, when reviewing the Complaint's sufficiency for the MTD, it will review only those facts and claims in Bowman's Complaint.  See Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)("The nature of a rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). The Response to the Show Cause Order does not operate as an amended complaint, but as an explanation how Bowman believes her Complaint states a claim. As the PFRD notes, even if the Court considers Bowman's arguments in her Response, those arguments do not cure the pleading deficiencies the PFRD identifies. See PFRD at 4 n.1. The Court, therefore, concludes that there is no error in Magistrate Judge Yarbrough's review of the complaint. Last, because the MTD and PFRD address the same issues in the Show Cause Order, the Court quashes the Order to Show Cause.

## V. BECAUSE BOWMAN'S FEDERAL TAX RETURNS ARE RELEVANT AND NON-PRIVILEGED, THEY APPROPRIATELY ARE SUBJECT TO DISCOVERY.

Bowman's objects finally to Magistrate Judge Yarbrough's decision not to analyze her arguments that her tax returns are not relevant, because she has not put her tax returns at issue, and that they would in any case be private papers not subject to discovery. See Objections at 31-32. Magistrate Judge Yarbrough does not address these arguments in the PFRD, because he recommends concluding that Friedman prevails on a different argument regarding the search and seizure -- that Bowman never produced her tax returns, so a search or seizure never occurred. See PFRD at 6. Although the Court agrees above that Friedman prevails on this theory, the Court nonetheless examines Bowman's argument that she did not put her tax returns at issue.

In her MTD, Friedman argues that Bowman does not state a claim for an unreasonable search and seizure of her tax returns, because the "Plaintiff had no expectation of privacy in her federal tax returns when she put them at issue; therefore, no unreasonable search and/or seizure occurred." MTD at 3. Particularly, Friedman argues that, although Bowman "contended she was an employee, not an independent contractor, and argued that she should not have to pay the state

gross receipts tax for that reason," she nevertheless received an IRS 1099 form.[7]  MTD at 3.

According to Friedman, because Bowman argued that she was an employee, Friedman was

"entitled to discover if Plaintiff took deductions on her federal tax return consistent with having a

business income (i.e. income as an independent contractor), rather than a wage income (i.e. income

as an employee)."  MTD at 3-4.

In her Objections, Bowman argues that "the issue to be resolved in the state lawsuit was

Plaintiff's work status," and that Friedman provided no authority "to defend her position that the

employment issue of a taxpayer converts automatically into [a] federal tax returns issue because

the worker claimed to be an employee."  Objections at 31.  Further, Bowman argues that, even

assuming that her tax returns were at issue, "[a]ny originals or copies of any tax returns and tax

documents are part of the Plaintiff's personal papers when in her possession and thus they are

private."  Objections at 32.

Rule 1-026(b)(1) of the New Mexico Rules of Civil Procedure for the District Courts lays

out the appropriate scope of discovery in civil cases, stating: "Parties may obtain discovery of any

information, not privileged, which is relevant to the subject matter involved in the pending action."

N.M.R.A. 1-026(b)(1).  While a taxpayer's tax returns are, in most cases, confidential, New

Mexico law lifts this protection "during judicial proceedings when the taxpayer is a party, and tax

administration  is  the  gist  of  the  case."   Breen v. State Taxation and Revenue Dept.,

2012-NMCA-101 ¶ 27, 287 P.3d 379, 388.  See N.M.S.A. § 7-1-8.4(A)(3) ("An employee of the

[Taxation and Revenue] department [("NMTRD")] may reveal to . . . a district court . . . a return

---

[7]The IRS 1099 form is a series of forms, which independent contractors or freelancers use frequently to report payments that do not typically come from an employer.  See TurboTax, What Is an IRS 1099 Form?,  https://turbotax.intuit.com/tax-tips/irs-tax-forms/what-is-an-irs-1099-form/L3NxSPMUe (last visited August 22, 2022).

or return information . . . in any matter in which the department is a party and the taxpayer has put the taxpayer's own liability for taxes at issue."). Although N.M.S.A. § 7-1-8.4(A) refers specifically to a NMTRD employee's revelation of a taxpayer's tax return or return information, such a reading extends reasonably to requiring a taxpayer to reveal that same information in the same proceedings. See Breen v. State Taxation and Revenue Dept., 2012-NMCA-101, ¶ 42, 287 P.3d at 391-92 (Sutin, J., concurring). In affirming the dismissal of the District Court, First Judicial District, County of Santa Fe, State of New Mexico, of Bowman's case on appeal, the Court of Appeals of New Mexico concludes that Bowman's tax returns are neither privileged nor irrelevant. See Bowman v. Manforte, No. A-1-CA-37874, 2020 WL 1322248, ¶ 5, at *1 (N.M. Ct. App. Feb. 28, 2020)(unpublished)("[T]he very nature of the complaint has made [Bowman's] federal return information a relevant and non-privileged matter for purposes of discovery.")(citing Stohr v. N.M. Bureau of Revenue, 1976-NMCA-118, ¶ 8, 90 N.M. 43, 559 P.2d 240). The Court agrees with this conclusion.

Although she contends that she has placed only her employment status and not her tax returns at issue in this case, Bowman brought initially this action for a refund of gross receipt taxes. See PFRD at 1. Bowman's tax liability turns on whether she is an employee or an independent contractor, but this determination arises in the context of a tax protest and amidst concerns that she may have taken certain deductions consistent with those of an independent contractor while representing that she is an employee. See MTD at 3-4. Because Bowman is contesting her tax liability, she has "put the taxpayer's own liability for taxes at issue." N.M.S.A. § 7-1-8.4(A)(3). Further, having brought the suit against John Manaforte, in his capacity as Acting NMTRD Secretary, she has put her tax liability at issue in a "matter in which the department is a party." N.M.S.A. § 7-1-8.4(A)(3). Under these circumstances, therefore, the confidentiality typically

afforded a taxpayer's tax returns and return information is not available to Bowman.  See Breen v. State Taxation and Revenue Dept., 2012-NMCA-10,1 ¶ 27, 287 P.3d at 388.  Thus, under rule 1-026(b)(1) of the New Mexico Rules of Civil Procedure for the District Courts, Bowman's tax returns are appropriate for discovery.

**IT IS ORDERED** that: (i) the Plaintiff's Objections to Court's Proposed Findings and Recommended Disposition Regarding Motion to Dismiss, filed June 21, 2022 (Doc. 53), are overruled; (ii) the Proposed Findings and Recommended Disposition Regarding Motion to Dismiss, filed June 7, 2022 (Doc. 52), is adopted; (iii) the Order to Show Cause, filed July 21, 2021 (Doc. 6), is quashed; (iv) Defendant Cordelia Friedman's Motion to Dismiss, filed October 27, 2021 (Doc. 19), is granted; (v) the Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Dismiss, filed November 17, 2021 (Doc. 30), is denied; (vi) this matter is dismissed in its entirety; and (vii) the Court will enter a separate Final Judgment.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Daniela Bowman
Albuquerque, New Mexico

> *Plaintiff pro se*

Paula Grace Maynes
Miller Stratvert, P.A.
Santa Fe, New Mexico

-- and --

Samantha E. Kelly
Miller Stratvert, P.A.
Albuquerque, New Mexico

> *Attorneys for the Defendant*