## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DANIELA BOWMAN,

      Plaintiff,

v.                                                              No. 1:21-cv-00675-JB-SCY

CORDELIA FRIEDMAN,

      Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### REGARDING MOTION TO ALTER OR AMEND A JUDGMENT

On August 31, 2022, the Court entered an order adopting the Proposed Findings and Recommended Disposition ("PFRD") and granting Defendant's motion to dismiss. Doc. 54. In this Dismissal Order, the Court dismissed Plaintiff's complaint in its entirety finding that (1) her claim that Defendant illegally searched and seized her tax returns failed because no unreasonable search or seizure occurred since she put her tax returns at issue in the state court case and since she never actually turned over her tax returns to Defendant; and (2) her claim for a violation of due process failed as she was afforded ample process in her state court case. Doc. 52 (PFRD); Doc. 54 (Dismissal Order adopting PFRD). The Court then entered a Final Judgment. Doc. 55.

Presently before the Court is Plaintiff's Motion to Alter or Amend Judgment directed at the Dismissal Order. Doc. 56; *see also* Doc. 58 (response); Doc. 59 (reply).[1] The Honorable

---

[1] In her reply, Plaintiff points out that Defendant filed her response six days late. *See* Doc. 56 (motion filed September 27, 2022); Doc. 58 (Defendant's response filed 20 days later, on October 17, 2022); *see also* D.N.M. LR-Civ. 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). Plaintiff therefore argues that the Court should not consider the response. Given that the timing of the response does not appear to have prejudiced Plaintiff, I recommend that the Court reject Plaintiff's argument and exercise its discretion to consider the response. Nonetheless, even if the Court declines to consider the response, the outcome of this PFRD does not change. That is, for the reasons discussed below, I recommend finding that the motion itself fails to justify why reconsideration is warranted.

James O. Browning referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B), (b)(3) and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 44. Having reviewed the briefs and legal authority, I recommend denying Plaintiff's motion.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not recognize motions for reconsideration. *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). Instead, a motion for reconsideration "may be construed in one of two ways: if filed within [28][2] days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than [28] days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." *Id.* Here, Plaintiff requests relief pursuant to both Rule 59(e) and 60(b) without arguing why either should apply. Plaintiff filed her motion on September 27, 2022, which was 27 days after the entry of the Dismissal Order and Final Judgment. Doc. 56. Accordingly, I recommend treating her motion as a request to alter or amend the judgment under Rule 59(e).[3]

Under the Rule 59(e) standards, a court may grant a motion for reconsideration in three circumstances: when there is "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). A motion to reconsider is not an opportunity "to revisit issues already addressed or advance arguments that could have been

---

[2] Since *Computerized Thermal Imagining* was published in 2002, the relevant period under Rule 59(e) has changed from 10 days to 28 days.

[3] In her reply, Plaintiff makes an argument under Rule 60(b)'s "fraud upon the Court" standard without offering any explanation as to why Rule 60(b) applies. Doc. 59 at 3. I recommend rejecting her argument under Rule 60(b).

raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). In the present

motion, Plaintiff does not argue that there has been an intervening change in controlling law or

that new evidence in available. Thus, I assume that Plaintiff bases her request for reconsideration

on the need to correct clear error or prevent manifest injustice.

## ANALYSIS

In her motion, Plaintiff asserts that Court made 18 mistakes in its Dismissal Order. I will

address each in turn, grouping together alleged mistakes that relate to the same cause of action.

### A. Objections to Motion for Sanctions

Plaintiff's first alleged mistake concerns other orders in the case and not the claims

addressed in the Dismissal Order.

#### 1. Plaintiff's Objections

Under "Mistake 1" Plaintiff argues that the Court failed to rule on her objections to the

order denying her motion for sanctions. *See* Doc. 49 (objections). This argument, however, is

moot because the Court has now issued an order overruling those objections. Doc. 57.

### B. Fourth Amendment Search and Seizure: Plaintiff Placed Her Tax Returns at Issue

Plaintiff's first series of requests to amend the Court's judgment all relate to the

relevancy of her tax returns. For context, Plaintiff brought a claim for relief under the Fourth

Amendment, asserting that her tax returns were subject to an unreasonable search and seizure.

She asserted in her complaint that the only issue in the state-court case was whether she was an

employee or independent contractor and that her tax returns were not at issue. Doc. 1 ¶¶ 6, 9, 16-

18, 20, 23, 24-31. She alleges that Defendant used lies and misrepresentations about the nature of

the case and the law to manipulate the state court into believing her tax returns were at issue and

to cause the state court to issue a discovery order for her tax returns. *Id.* In the Dismissal Order,

the Court held that no unreasonable search or seizure of Plaintiff's tax returns occurred because

her tax returns were non-privileged and relevant to the state-court case and were therefore an

appropriate subject of discovery in the state court case. Doc. 54 at 17-20. Plaintiff now takes

issue with multiple parts of that holding.[4] As set forth below, none of Plaintiff's arguments have

merit.

    2.  <u>Privacy of Plaintiff's Tax Returns</u>

       First, Plaintiff argues that the Court misunderstood her allegations: "There is no

documents . . . where Plaintiff ha[s] ever alleged that if her tax returns were at issue they are not

subject to discovery **because they are private papers**." Doc. 56 at 3 (emphasis in original). In

other words, Plaintiff appears to be arguing that she never made a privacy objection and that if

her tax returns had been relevant, she would have turned them over without making a privacy

objection. This argument is simply a rehashing of her argument that her tax returns were not

relevant to the state court proceedings and thus should not have been turned over. I recommend

rejecting this argument because the Court has already considered it in the Dismissal Order and

because Plaintiff fails to explain why reconsideration of the Dismissal Order is warranted.

    3.  <u>NMSA § 7-1-8.4</u>

       Plaintiff asserts that the Court misinterpreted NMSA § 7-1-8.4. Doc. 56 at 4-5. For

context, the Court reasoned in its Dismissal Order that, "While a taxpayer's tax returns are, in

---

[4] Of note, the Court's entire discussion regarding whether Plaintiff put her tax returns at issue is dicta. *See* Doc. 54 at 17 ("Magistrate Judge Yarbrough . . . recommends concluding that Friedman prevails on a different argument regarding the search and seizure -- that Bowman never produced her tax returns, so a search or seizure never occurred. See PFRD at 6. Although the Court agrees above that Friedman prevails on this theory, the Court nonetheless examines Bowman's argument that she did not put her tax returns at issue."). Thus, even if Plaintiff is correct that the Court committed clear error in its reasoning regarding the relevancy of her tax returns, her Fourth Amendment claim regarding an unreasonable search and seizure still fails for the other reason discussed in the Dismissal Order.

most cases, confidential, New Mexico law lifts this protection 'during judicial proceedings when the taxpayer is a party, and tax administration is the gist of the case.'" Doc. 54 at 18 (*citing Breen v. State Tax. & Rev. Dep't*, 2012-NMCA-101, ¶ 27 & NMSA § 7-1-8.4(A)(3)). The Court went on to reason that, "Although N.M.S.A. § 7-1-8.4(A) refers specifically to a NMTRD employee's revelation of a taxpayer's tax return or return information, such a reading extends reasonably to requiring a taxpayer to reveal that same information in the same proceedings." Doc. 54 at 19 (*citing Breen*, 2012-NMCA-101, ¶ 42 (Sutin, J., concurring)).

Plaintiff argues that the Court improperly extended Section 7-1-8.4 beyond its plain language. That is, she argues that "[t]he legislature intended only for 'an employee' of the NMTRD to have discretion when releasing tax information to district court. A requirement directed to Plaintiff to mandate release of her tax return information was neither directly written into the plain text of, nor implied by Section 7-1-8.4." Doc. 56 at 4-5. Plaintiff is correct that Section 7-1-8.4 only applies to employees of the NMTRD releasing tax information, not to taxpayers themselves. But the Court did not attempt to extend the plain language of Section 7-1-8.4 or hold that Section 7-1-8.4 implicitly applies to taxpayers. Instead, the Court looked at the reasoning behind the section and applied that reasoning to the present case to conclude that taxpayers must also release their tax returns that they put at issue in a lawsuit. *See* Doc. 54 at 19 ("Although N.M.S.A. § 7-1-8.4(A) refers specifically to a NMTRD employee's revelation of a taxpayer's tax return or return information, such a reading extends reasonably to requiring a taxpayer to reveal that same information in the same proceedings.").[5] And Plaintiff fails to show that the Court's reasoning was a clear error.

---

[5] Indeed, when considering on direct appeal whether Plaintiff's tax returns where privileged, the New Mexico Court of Appeals noted that Section 7-1-8.4 permits the Department to release tax information to a court, which was not at issue in Plaintiff's case. *Bowman v. Manforte*, No. A-1-

4.  Reliance on the New Mexico Court of Appeals Case

In discussing the relevancy of Plaintiff's tax returns to the state-court case, the Court

noted that the New Mexico Court of Appeals had already concluded that Plaintiff's tax returns

were neither privileged nor irrelevant and that "[t]he Court agrees with this conclusion." Doc. 54

at 19 (citing *Bowman v. Manforte*, No. A-1-CA-37874, 2020 WL 1322248, at *2 (N.M. Ct. App.

Feb. 28, 2020), cert. denied (Apr. 23, 2020)). Plaintiff argues that reliance on the New Mexico

Court of Appeals case was improper and that this federal Court was not allowed to "accept the

truth of the matter asserted" in the New Mexico Court of Appeal case. Doc. 56 at 6. That is,

Defendant attached a copy of New Mexico Court of Appeals Order to its motion to dismiss (Doc.

19-1) and Plaintiff argues that in order to not convert the motion to dismiss to a motion for

summary judgment, the Court may take judicial notice of the Order but may not consider it to

prove the truth of the matter asserted. Doc. 56 at 6.

The rule Plaintiff is referencing is this: "Because a court may consider facts subject to

judicial notice without treating a motion to dismiss as a motion for summary judgment, a court

may consider documents reflecting facts that are a matter of public record as long as it considers

those documents to show their contents, not to prove the truth of the matters asserted therein.

This includes another court's publicly filed records concerning matters that bear directly upon

the disposition of the case at hand." *Hartleib v. Weiser L. Firm, P.C.*, 861 F. App'x 714, 719

(10th Cir. 2021) (cleaned up). The Court, however, did not accept the factual findings in the New

---

CA-37874, 2020 WL 1322248 (N.M. Ct. App. Feb. 28, 2020). "Instead, Plaintiff's complaint has placed her federal returns at issue, because she appears to be claiming inconsistent status in her state and federal returns." *Id.* (citing *Stohr v. N.M. Bureau of Revenue*, 1976-NMCA-118, ¶ 8, 559 P.2d 420). Thus, Section 7-1-8.4 did not supply the state-court's authority to order Plaintiff to produce her tax returns and this Court's Dismissal Order likewise did not hold that Section 7-1-8.4 supplied the authority for Plaintiff to produce her tax returns.

Mexico Court of Appeals case as true in order to reach its holding. Instead, the Court examined the allegations in Plaintiff's complaint and the arguments in the motion to dismiss and held that Plaintiff did place her tax returns at issue in the state-court case. Doc. 54 at 19-20. In reaching this holding, the Court noted that the New Mexico Court of Appeals reached the same conclusion in the underlying state-court case. Doc. 56 at 19. Even eliminating the Court's reference to the New Mexico Court of Appeals decision with which Plaintiff now takes issue, the Court's conclusion on this issue in the Dismissal Order stays the same. Thus, Plaintiff has not shown why reconsideration is warranted.

     5.  <u>Whether Plaintiff put her Tax Returns at Issue</u>

Lastly on this topic, Plaintiff argues that she only put her gross receipt tax liability at issue, not her income tax returns. Doc. 56 at 8. But this argument is just a repeat of an argument she made in response to the motion to dismiss and in her objections to the PFRD on the motion to dismiss. *See* Doc. 22 at 4; Doc. 53 at 31-33. Plaintiff also argues in the present motion that Defendant made a number of false statements in the motion to dismiss. Doc. 56 at 8-12. But Plaintiff had the opportunity to raise such arguments in her response to that motion. In sum, other than making arguments already rejected by the Court, or raising arguments she could have advanced earlier, Plaintiff offers no reason why the Court should revisit these issues. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) ("A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier.").

**C. Fourth Amendment Search and Seizure: No Search or Seizure Occurred**

Plaintiff's next series of requests to reconsider relate to the other ground upon which the Court held that Plaintiff's Fourth Amendment unreasonable search and seizure claim fails. The

Court held that Plaintiff failed to state a claim for violation of the Fourth Amendment because she never alleged that she actually produced her tax returns in response to the state court's discovery order. Thus, she never alleged that a search or seizure actually took place. Doc. 54 at 10-13.

6. Detention in the Courtroom

In her objections to the PFRD, Plaintiff argued that a seizure did occur when the state-court judge ordered her to stay in the courtroom until she executed IRS form 4506. The Court considered this allegation in the Dismissal Order, finding that no search or seizure occurred.

> [The Complaint] alleges that, during a court hearing on July 27, 2018, Friedman lied to the State court about Bowman's deadline to submit her tax returns. See Complaint ¶ 23, at 11. The State court then detained Bowman in the courtroom and threatened her with jail, forcing her to sign a form 4506. See Complaint ¶ 23, at 11. With these allegations, however, Bowman still falls short of alleging the occurrence of a search and seizure, for two reasons. First, she does not allege that she was arrested, but only that the State court detained her in the courtroom and that she "almost lost her freedom." Complaint ¶ 23, at 11. Bowman's Complaint, likewise, does not allege a Fourth Amendment violation against Friedman for the State court detaining Bowman in the courtroom. See Complaint ¶¶ 32-48, at 16-21. Second, solely because Bowman filled out the form to request tax returns does not establish that a seizure of her tax returns ever occurred. Nowhere in her Complaint does she say that Friedman ever used the form 4506 to obtain her tax returns from the IRS.

Doc. 54 at 12-13 (footnotes omitted).

In her current motion, Plaintiff alleges that the detention in the courtroom was an actual arrest and therefore an unreasonable seizure. Doc. 56 at 13-14. Even accepting that allegation as true, Plaintiff does not allege in her Complaint that *Defendant Friedman* violated Plaintiff's Fourth Amendment rights when the *state court judge* detained her in the courtroom. Plaintiff argues that she does make such allegations against Defendant Friedman, pointing to three paragraphs in her complaint. Doc. 56 at 15 (citing Doc. 1 ¶ 39 ("Ms. Friedman did not stop at false statements, she harassed and humiliated Plaintiff, gaining another 'professional' advantage

with the presiding judge."); *id.* ¶ 44 (If in "civil litigation a discovery order is obtained illegally, the constitutional protection of the Fourth Amendment for the affected US citizen is violated."); *id.* ¶ 45 ("Plaintiff was entitled to a lawsuit that resolved her issue – determining her worker's status in 2011. Ms. Friedman prevented that due to Plaintiff process perjuring herself, acting in her individual capacity but using her authority as a Special Assistant to the Attorney General to gain advantage over Plaintiff in convincing the Court of her professionalism and knowledge of the law.")). But those paragraphs make no allegation that Defendant Friedman seized Plaintiff when the state court judge ordered her to remain in the courtroom. I recommend rejecting Plaintiff's argument on this issue.

   7.   IRS From 4506

   As discussed above, when addressing Plaintiff's claim that she was detained in the courtroom and forced to execute IRS Form 4506,[6] the Court held in the Dismissal Order that "[s]oley because Bowman filled out the form to request tax returns does not establish that a seizure of her tax returns ever occurred. Nowhere in her Complaint does she say that Friedman ever used the form 4506 to obtain her tax returns from the IRS." Doc 54 at 13-14. Plaintiff now disputes this holding, arguing that the form itself was her personal papers which Defendant illegally seized. Doc. 56 at 15. But Plaintiff never alleges in her complaint that Defendant conducted an illegal seizure of this IRS form. Plaintiff only alleges that the state-court judge forced her to sign the form; there is no reference in the complaint to Defendant Friedman ever having possession of it or using it. *See* Doc. 1 ¶ 23. Given this missing information, Plaintiff fails to explain why the Court should reconsider its Dismissal Order.

---

[6] According to the IRS website, Form 4506 is used to "[r]equest a copy of your tax return, or [d]esignate a third party to receive the tax return." IRS, About Form 4506, *Request for Copy of Tax Return*, https://www.irs.gov/forms-pubs/about-form-4506 (last visited January 19, 2023).

8.  <u>Actual Seizure</u>

Plaintiff next takes issue with the Court's holding that no actual search or seizure ever occurred of her tax returns because she never produced them in response to the state-court's order. Citing the plain language of the Fourth Amendment, Plaintiff argues that an actual search or seizure is not required. Doc. 56 at 16-17. This is simply a repeat of arguments Plaintiff made in response to the motion to dismiss and in her objections to the PFRD and she fails to explain why reconsideration is warranted. Therefore, I recommend that the Court not reconsider this issue.

9.  <u>Missing Fact</u>

Plaintiff argues that Defendant "obtained a discovery order for a document she knew Plaintiff cannot possibly deliver to her" and thus the state-court's discovery order for her tax returns was unreasonable. Doc. 56 at 20. It is unclear how this argument relates to Plaintiff's claim for illegal search and seizure. That is, this argument appears to be attacking the grounds upon which the state court issued its discovery order, but does not address the Court's holding in the Dismissal Order that Plaintiff failed to assert that either a search or a seizure actually occurred. Indeed, accepting Plaintiff's allegation as true (that Defendant sought a tax return Plaintiff was not able to turn over) only supports that Court's holding that a search and seizure of Plaintiff's tax returns never actually occurred. I recommend rejecting this argument for reconsideration.

10. <u>Plaintiff's Disclosure of Deductions</u>

Plaintiff explains that she "disclosed part of her federal tax returns (her personal copy of the return), the form where business deductions are listed, and Plaintiff provided all receipts and explanations about those deductions. Plaintiff also offered that her personal copy of her federal

tax return, although irrelevant, be examined in judge's chambers as well." Doc. 56 at 20. To the extent Plaintiff is arguing that Defendant did seize and search her tax returns because Plaintiff turned part of them over, this allegation does not appear in her complaint. Nowhere in the complaint does Plaintiff say that she produced her tax returns in response to the state court's discovery order. The closest the complaint comes to making such an allegation is her statement that "Plaintiff offered to [Defendant] form Schedule C from her copy of the Federal Return. Ms. Friedman did not accept it because Plaintiff accounted for and explained away all deductions on that form supported by receipts and facts. Plaintiff even offered that her copy of the Federal Return be examined in judge's chambers, but [Defendant] did not relent." Doc. 1 ¶ 50. These allegations only support the Court's conclusion in the Dismissal Order that Plaintiff never actually produced her tax returns involuntarily and so neither a search nor seizure ever occurred. I thus recommend denying reconsideration on this point.

     11. <u>Fifth Amendment</u>

     Plaintiff argues that the "Court did not recognize the constitutional right of a person to invoke the Fifth Amendment protection when refusing to disclose personal information." Doc. 56 at 21. Once again, this argument appears to attack the validity of the state-court discovery order and it does not address the Dismissal Order's holding that Plaintiff failed to state a Fourth Amendment claim because she never alleges that a search or seizure ever actually occurred. In other words, even if Plaintiff is correct that she had a right not to turn over her tax returns, because she never turned them over, no unreasonable search or seizure occurred. I recommend rejecting Plaintiff's argument for reconsideration.

### D. Procedural Due Process

Plaintiff's second cause of action in her complaint alleged a violation of procedural due process. As summarized in the PFRD:

> In her complaint, Plaintiff alleges that she had a protected interest in her state-court lawsuit, but she was denied process—i.e. the court dismissed the case before addressing the merits—based on lies and misrepresentations Defendant made to the court. See Doc. 1 ¶ 45 ("Plaintiff was entitled to a lawsuit that resolved her issue—determining her worker's status in 2011. [Defendant] prevented that due to Plaintiff [by] perjuring herself, acting in her individual capacity but using her authority as a Special Assistant to the Attorney General to gain advantage capacity but using her authority as a Special Assistant to the Attorney General to gain advantage over Plaintiff in convincing the Court of her professionalism and knowledge of the law."); see also id. ¶¶ 9, 20, 23-25, 28, 29, 46, 51, 52.

Doc. 52 at 7. Adopting the PFRD's recommendation, the Court dismissed this cause of action, holding that Plaintiff's complaint "does not state facts demonstrating that she did not receive the appropriate level of process." Doc. 54 at 14. To the contrary, her complaint alleges that "the State gave [Plaintiff] an opportunity to be heard, including an opportunity to address [Defendant's] alleged lies and misrepresentations." *Id.* (citing Doc. 1 ¶¶ 15, 17, 19, 31). Plaintiff's next series of requests to reconsider relate to this holding. Doc. 56 at 22-32.

### 12. Evidence on the Merits

Plaintiff argues that whether she was afforded an appropriate level of process is a question of fact that the Court cannot determine at the motion to dismiss stage. Doc. 56 at 23. She explains that "[a]t this stage of the lawsuit, neither party has submitted evidence on what was discussed during the pretrial proceeding or what evidence was submitted during those proceedings." *Id.* At the motion to dismiss phase, the Court does not consider evidence but the allegations in the complaint. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) ("[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face."). The

Court, thus, did not consider evidence in ruling against Plaintiff. Instead, the Court looked at the allegations in Plaintiff's complaint and found that, accepting them as true, as a matter of law, she was afforded appropriate process in the state court. Plaintiff fails to explain why reconsideration of this conclusion is warranted.

13. <u>Motion to Dismiss Standard</u>

Plaintiff argues that "[i]n a [motion to dismiss] for failure to state a claim the standard of review requires that Plaintiff plainly state what constitutionally protected rights she was deprived of, the circumstances of deprivation and that the person responsible acted under the color of law." Doc. 56 at 23. She asserts that her complaint met those requirements and thus dismissal was incorrect. This argument is a repeat of her argument made in response to the motion to dismiss and in her objections which the Court already considered and rejected. Plaintiff offers no reason as to why the Court should consider her argument again and I recommend that the Court not do so.

14. <u>Due Process Standard</u>

Citing *Board of Education of Carlsbad Municipal Schools v. Harrell*, 1994-NMSC-096, 882 P.2d 511, Plaintiff argues that the Court followed the wrong standard for procedural due process. Doc. 56 at 24. Specifically, Plaintiff points to one section of *Harrell* in which the New Mexico Supreme Court explains that

> The essential elements of the adversary process, some or all of which may be required as part of the due process afforded an individual when the government deprives him of life, liberty, or property through the action of a state agency, are: (1) adequate notice of the charges or basis for government action; (2) a neutral decision-maker; (3) an opportunity to make an oral presentation to the decision-maker; (4) an opportunity to present evidence or witnesses to the decision-maker; (5) a chance to confront and cross-examine witnesses or evidence to be used against the individual; (6) the right to have an attorney present the individual's case to the decision-maker; (7) a decision based on the record with a statement of reasons for the decision.

1994-NMSC-096, ¶ 25, 882 P.2d 511, 519. Plaintiff argues she was "not afforded any of the essential elements (3), (4), (5), and (6)." Doc. 56 at 24.

To begin, Plaintiff misunderstands the directive in *Harrell*. That case involved a school district superintendent who was discharged by the school board. 1994-NMSC-096, ¶¶ 4-5. The superintendent appealed the board's decision to arbitration as set forth by New Mexico state law, NMSA § 22-10-17.1.[7] *Id.* ¶ 6. After losing at arbitration, the superintendent challenged, in district court, the constitutionality of the compulsory arbitration provision in Section 22-10-17.1 and the case was appealed to the New Mexico Supreme Court. *Id.* ¶¶ 6-8. Specifically, the superintendent argued that he was denied due process because arbitration under Section 22-10-17.1 does not use the Rules of Civil Procedure or the Rules of Evidence and the arbitrator is not required to be an attorney or judge. *Id.* ¶ 20. The New Mexico Supreme Court examined whether the arbitration provision violated the procedural due process guarantees in the Fourteenth Amendment. *Id.* ¶ 23. In doing so, it noted that "[t]he Supreme Court has not formulated standards for due process in postdeprivation hearings," but adversary proceedings include some essential elements—i.e., those quoted above by Plaintiff—which may be required to meet due process standards. *Id.* ¶ 25.

Plaintiff lists these essential elements as strict factors that must all be present in every proceeding; if any are missing, she argues, a violation of due process has occurred. But the court in *Harrell* specifically narrowed its analysis, stating of the essential elements that "some or all of which may be required" as part of the due process. 1994-NMSC-096, ¶ 25. *Harrell* also acknowledges that "[d]ue process considerations are flexible; the circumstances of the case

---

[7] Since *Harrell* was decided, Section 22-10-17.1 has been recompiled as NMSA § 22-10A-26 to -28.

determine the requirements." *Id.* ¶ 23. Here, the circumstances of Plaintiff's case are very

different than in *Harrell*. Plaintiff is not challenging an arbitration proceeding, conducted

according to state statute, but is arguing she was denied due process when the state district court

dismissed her case. And, as the Court previously held in its Dismissal Order, Plaintiff's

allegations establish that she was given an opportunity to be heard in state court. Doc. 54 at 13-

15. I thus recommend rejecting her argument that *Harrell* requires reconsideration of the Court's

Dismissal Order.

       15. <u>Defendant's Alleged Lies</u>

      Plaintiff argues that Defendant lied to the state court, including in an affidavit, and that

the "perjury by [Defendant] would automatically give rise to 'denial of due process.'" Doc. 56 at

25. But the Dismissal Order held that "even assuming Defendant made lies and

misrepresentations to the state court, those lies did not exclude Plaintiff from engaging in the

state court process." Doc. 54 at 14 (quoting the PFRD). Plaintiff fails to explain why the Court

should reconsider this holding.

       16. <u>State Tax Law</u>

      Plaintiff argues that the "Court did not consider the State specific due process afforded to

New Mexico tax payers when it dismissed the claim." Doc. 56 at 26. Plaintiff cites two specific

provisions of the Taxpayer Bill of Rights which she alleges Defendant violated by lying to the

state court. First, she argues that under Section 7-1-4.2(G) she has a right to seek review of her

gross receipt tax assessment. Doc. 56 at 26-27; *see also* Section 7-1-4.2(G) (taxpayers have "the

right to seek review, through formal or informal proceedings, of any findings or adverse

decisions relating to determinations during audit or protest procedures in accordance with the

provisions of Section 7-1-24 NMSA 1978 and the Administrative Hearings Office Act"). But the

Court's Dismissal Order concluded that Plaintiff did have a review of her tax protest in state court; it just did not come out the way Plaintiff would have liked.

Second, Plaintiff argues that she has a right to a written determination of liability or nonliability of gross receipt taxes under Section 7-1.4.2(I). Doc. 56 at 26-27. But she misreads this section and, upon a complete reading, this section is not applicable to her lawsuit. Plaintiff brought her lawsuit under Section 7-1-26(C)(2) for disputing liabilities and claiming credits, rebates, or refunds. *See* Doc. 1 ¶ 5. Section 7-1-4.2(I), however, relates to a different process: taxpayers have "the right to seek a compromise of an asserted tax liability by obtaining a written determination of liability or nonliability when the secretary in good faith is in doubt of the liability as provided in Section 7-1-20 NMSA 1978." Section 7-1-20, for its part, allows the taxpayer and the secretary to enter into a compromise, known as a closing agreement, if the secretary "in good faith is in doubt of the liability of payment." NMSA § 7-1-20. Section 7-1-4.2(I) reiterates that the taxpayer is entitled to seek a compromise when the secretary in good faith is in doubt of the liability. Neither Section 7-1-20 nor Section 7-1-4.2(I) apply to Plaintiff's case as her case does not concern a compromise or closing agreement. And Section 7-1-4.2(I) does not entitle Plaintiff to a "'written determination of liability or nonliability' of gross receipt taxes" as she alleges. Doc. 56 at 27. I therefore recommend denying reconsideration on this point.

Lastly, Plaintiff proceeds to explain that she had the burden to present evidence on the disputed tax assessment but that Defendant deprived her of that opportunity by lying to the state court. Doc. 56 at 27-28. This argument is a repeat of arguments the Court already rejected and I recommend that the Court not reconsider them.

17. <u>Employee v. Independent Contractor</u>

Plaintiff discusses the evidence needed to determine whether a taxpayer is an employee or independent contractor and argues the Defendant lied to the state Court when she said she needed Plaintiff's tax returns as relevant evidence. Doc. 56 at 29-30. But again, this argument merely repeats arguments Plaintiff has already made and this Court has addressed. This Court has concluded that Plaintiff's complaint alleges that she had an opportunity to be heard in the state court, including an opportunity to address Defendant's alleged lies. Doc. 54 at 14. Other than repeating arguments already made, Plaintiff offers no reason for the Court to reconsider this holding, and I recommend that the Court not do so.

18. <u>Outcome of the State Case</u>

In the Dismissal Order, the Court reasoned that "[d]ue process does not guarantee, however, [Plaintiff] her desired case outcome." Doc. 54 at 15. Plaintiff takes issue with this statement, asserting that her "Complaint is only about due process rights, not about winning her state lawsuit." Doc. 56 at 30. As previously discussed in this PFRD and as previously held by the Court, Plaintiff's allegations make clear that she was afforded appropriate process in the state court. Plaintiff offers no reason to reconsider that holding.

**RECOMMENDATION**

In sum, I recommend finding that Plaintiff has failed to present any reason reconsideration of the Dismissal Order is warranted. Instead, the majority of her motion repeats arguments she already made and which this Court already rejected. I therefore recommend DENYING Plaintiff's Motion to Alter or Amend a Judgment (Doc. 56).

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**